UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARIA JOSE ARANCIBIA,
Petitioner

v.

SOHAIL NASSIRI
Respondent

---

PETITIONER'S MEMORANDUM IN SUPPORT OF RELIEF
UNDER HAGUE CONVENTION

---

INTRODUCTION

Briefly, this action seeks return of a ten year old child to her custodial mother, pursuant to the provisions of the Hague Convention on international child abduction and the implementing legislation. The father took the child to the United States from Argentina and has unlawfully retained her, all as set out in further detail in the *Petition for Return of Child* and *Ex Parte Motion To Have Child Taken Into Custody And Brought Before The Court To Effect Return To Petitioner* filed contemporaneously with this Memorandum.

LAW

A. Governing Law

This case involves application of the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343

1

U.N.T.S. 89 (hereinafter "Hague Convention"). The United States is a signatory (as is Argentina) to the treaty, which has been ratified and therefore has the status of "supreme law of the Land". U.S. Const., art.VI. The International Child Abduction Remedies Act (1994), 42 U.S.C. 11601 et seq., is the implementing federal legislation.

The Hague Convention seeks to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." Hague Convention, preamble. The Convention has as primary aims "to restore the pre-abduction status quo and to deter parents from crossing borders in search of a more sympathetic court". Friedrich v. Friedrich, 78 F.3d 1060, 1063 (6th Cir. 1996) ("Friedrich II"). As noted in Walsh v.Walsh, 221 F.3d 204, 221-222, (1st Cir. 2000), "International child abduction is a serious problem. See H.R.Con.Res.293, 106th Cong.2000." and "In the United States, the vast majority of Hague Convention petitions result in the return of children to their country, and rightly so."

The Federal District Court has "the authority to determine the merits of an abduction claim, but not the merits of the underlying custody claim." Friedrich v. Friedrich, 983 F.2d 1396, 1400 (6th Cir. 1993) ("Friedrich I"); Whallon v. Lynn, 230 F.3d 450 (1st Cir. 2000), Blondin v. Dubois, 189 F.3d 240 (2nd Cir. 1999), Hague Convention, art. 19 ("A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.") After the petitioner demonstrates a removal from the child's

2

"habitual residence", the abduction claim is concerned with a determination of whether the defendant has "wrongfully removed or retained" the child; on this issue, the plaintiff bears the burden of proof by a preponderance of the evidence. See 42 U.S.C. § 11603(e)(1)(A).

"Once a plaintiff establishes that removal was wrongful, the child *must be returned* unless the defendant can establish one of four defenses." Friedrich v. Friedrich, 78 F.3d 1060, 1067 (6th Cir. 1996) ("Friedrich II") (emphasis added); Whallon v. Lynn, 230 F.3d 450, 460, see also, 42 U.S.C. § 11601(a)(4) ("Children who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies."); Article 12 of the Convention ". . . the judicial or administrative authority. . .**shall** order the return of the child forthwith". (emphasis added).

This circuit has recognized the Convention's " basic principle that a child's country of habitual residence is best placed to decide upon questions of custody and access, unless an exception applies". Whallon, supra.
As the Explanatory Report of Elisa Perez-Vera, (recognized by the U.S. State Department's Legal Analysis of the Hague Convention as "..the official history and Commentary on the Convention and ...a source on the meaning of the provisions of the Convention", and relied upon in the reported Hague Convention decisions) instructs:

> From the Convention's standpoint, the removal of a child by one of
> the joint holders without the consent of the other, is . . . wrongful, and
> this wrongfulness derives in this particular case, not from some

> action in breach of a particular law, but from the fact that such action has disregarded the rights of the other parent which are also protected by law, and has interfered with their normal exercise. The Convention's true nature is revealed most clearly in these situations: it is not concerned with establishing the person to whom custody of the child will belong at some point in the future, nor with the situations in which it may prove necessary to modify a decision awarding joint custody on the basis of facts which have subsequently changed. It seeks, more simply, to prevent a later decision on the matter being influenced by a change of circumstances brought about through unilateral action by one of the parties.
>
> Explanatory Report P 71, at 447-48.

As set out in Walsh v.Walsh, 221 F.3d 204, 218-219, "Courts are not to engage in a custody determination, so 'it is not relevant... who is the better parent in the long run, or whether [the absconding parent] had good reason to leave her home ...and terminate her marriage', " quoting Nunez-Escudero v. Tice-Menley, 58 F.3d 374, 377 (8th Cir. 1995).

As explained in "Friedrich II" at 78 F.3d p. 1068, "...the courts in the abducted-from country are as ready and able as we are to protect children... when we trust the court system in the abducted-from country, the vast majority of claims of harm – those that do not rise to the level of gravity required by the Convention – evaporate".

Under the treaty and the ICARA, once the petitioner establishes wrongful retention, as here, to prevent return the Respondent must establish by clear and convincing evidence the narrow exceptions under articles 13b and 20. Hague Convention, arts. 13b, 20; 42 U.S.C. § 11603(e)(2)(A); Friedrich, 78 F.. 3rd at 1067. As the Friedrich court stated: "We believe that a grave risk of harm for the purposes of the Convention can exist in only two situations. First, there is a grave

4

risk of harm when return of the child puts the child in imminent danger **prior** to the resolution of the custody dispute--e.g., returning the child to a zone of war, famine, or disease. Second, there is a grave risk of harm in cases of serious abuse or neglect, or extraordinary emotional dependence, when the court in the country of habitual residence, for whatever reason, may be incapable or unwilling to give the child adequate protection. Id. at 1069.

B. The Petitioner Has Set Forth Her Prima Facie Case

The Petitioner has attached the custody order from the Argentina Court granting her custody of the child. She had the child with her in Argentina since 1995. The father had visitation rights, but failed to return the child.

Under Article 3 of the Convention, the retention of a child is wrongful if: (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

One possessing custody rights is presumed to be exercising them. See, Explanatory Report P 71, at 449. One can only fail to "exercise" rights under the Hague Convention by a clear and unequivocal abandonment of the child. Friedrich, supra., at p. 1066. In short, the mother has asserted her prima facie case and her entitlement to mandatory return under the act is well-met.

5

## C. The Convention and the Statute Require Speedy Action by the Court

Article 11 provides that a court, when faced with a petition under the Convention, should "act expeditiously in proceedings for the return of children." Courts are to place these cases on a "fast track" in order to expedite these proceedings and carry out the purposes of the Convention.

The language of the Convention also authorizes courts to "take notice directly of the law of, and of judicial and administrative decisions, formally recognized or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable."

There is no requirement under the Hague Convention or under the ICARA that discovery be allowed or that an evidentiary hearing be conducted. Under the guidance of the Convention and the statutory scheme, the court is given the authority to resolve these cases without resorting to a full trial on the merits or a plenary evidentiary hearing.

The petition for return of the child involves a petition under a unique treaty and its implementing legislation, requires not only expeditious action by courts under article 11, but use of "the most expeditious procedures available." Hague Convention, art. 2. Indeed, the drafters of the treaty stressed the emergency nature of these cases: "Its nature is one of emergency because it seeks a speedy and immediate solution to the cases involved."

In addition to the requirement of expeditious action, the treaty has a number of provisions to help ensure that return proceedings are handled in such a

6

manner and that return of children to their country of habitual residence is likely. For example, the treaty sets forth generous rules regarding authentication of documents and judicial notice. Hague Convention, art. 14. The treaty further provides rights to petitioners when a decision is not rendered within a mere six weeks of filing their petition. Hague Convention, art. 11. Importantly, the treaty also provides that a court may order return of a child at any time, notwithstanding proof of treaty defenses. Hague Convention, art. 18 ("The provisions of this Chapter [pertaining to return of children] do not limit the power of a judicial or administrative authority to order the return of the child at any time.").

In accord, the ICARA repeatedly uses the word "prompt" to describe the nature of proceedings for the return of a child wrongfully removed or retained. 42 U.S.C. § 11601(a)(4). Like the treaty itself, the implementing legislation also provides a generous authentication rule. 42 U.S.C. § 11605 ("No authentication of such application, petition, document, or information shall be required in order for the application, petition, document, or information to be admissible in court."). Such a provision serves to expedite rulings on petitions for return of children wrongfully removed and retained. Expeditious rulings are critical to ensure that the purpose of the treaty - **prompt** return of wrongfully removed or retained children - is fulfilled. Hague Convention, art. 1. See generally the discussion in March v. Levine, 249 F. 3rd 462, (Sixth Cir. 2001) (cert. denied, 534 U.S. 1080 (2002).

D. Provisional Remedies

7

The Respondent is entitled to an Order directing the immediate return of her child. Provisional remedies are available to the court pending the mandated speedy return of the child to ensure her well-being and to prevent further removal or concealment. 42 U.S.C.11604. If the proceedings are delayed, the court should grant temporary physical custody to the parent with a valid custody order (mother) and not the illegally retaining parent (father).

The limitation found in Section 11604(b) merely requires that a court act in accord with applicable state law before removing a child from one with physical control on a provisional basis. Massachusetts by Chapter 209B of the General Laws has adopted Uniform Child Custody Jurisdiction Act. Within 209B, Section 14 directs ("shall") the Commonwealth to recognize custody of determinations of other nations provided they are reached in substantial conformity with the standards of the statute. Those judgments are to be enforced, like those of foreign states, in the same manner as a Massachusetts custody judgment. C.209 B§12. See, Tazziz v. Tazziz, 26 Mass.App.Ct. 809, 814, 817-818. (1988). The statute gives authority to order a party to appear with the child. 209B§8. Massachusetts would not be the "home state" under the statute, and therefore decline jurisdiction, and enforce the Argentine Order. C. 209B §§ 2(e), 12, 14. The Massachusetts statutory scheme, to reiterate, would result in a declination of jurisdiction and enforcement of the Argentine custody order, and the return of the child to her mother, the custodial parent. This court should do likewise on a provisional basis pending final return to the mother.

8

March 9, 2004                          By her attorney,

*[signature]*
Nancy Harmon, Esq.
BBO 221880

*[signature]*
Harold Robertson, Esq.
BBO 422700
Harmon & Robertson, P.C.
85 Merrimac St. 4th Floor
Boston, MA 02114
617-742-5900