UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARIA JOSE ARANCIBIA.

Petitioner,

v.                                                Civ. No.04-10494 WGY

SOHAIL NASSIRI,

Respondent

### DECLARATION OF CAROL G. FELDMAN, Ph.D., J.D.

Carol G. Feldman, subject to the pains and penalties of perjury, hereby declares as follows:

1. I am a clinical and forensic psychologist, and have been retained by Attorney Mark Pelosky to interview Mr. Sohail Nassiri in order to offer an opinion regarding what professional measures, if any, should be taken to protect the safety of Mr. Nassiri's daughter, Yasameen Nassiri. I have been licensed as a Clinical Psychologist in the Commonwealth of Massachusetts since 1979 and have maintained an ongoing private practice in psychotherapy. Most of my present work is as a Designated Forensic Psychologist, as well as a Qualified Examiner, in which I routinely perform court-ordered evaluations of individuals, as well as evaluations of sex offenders, under M.G.L. Chapter 123, sections 9 & 13. I also have a law degree from Suffolk Law School.

2. My understanding is that the present matter does not involve a custody determination, but rather an evaluation of the extent of risk of physical or psychological

1

harm to Yasameen if she were returned to Argentina, where her mother, Maria Jose Arancibia, presently resides.

3. Mr. Nassiri brought his daughter Yasameen to Boston on December 26, 2003 and continues to live here with his daughter. My understanding is that there is an agreement signed by both parents in Buenos Aires, Argentina on April 23, 1997 which stipulates that "visitations cannot exceed of fifteen days" at which time Yasameen usually returns to Argentina. Mr. Nassiri fears that returning Yasameen to Ms. Arancibia would place his daughter at an excessive risk of harm.

4. On March 20, 2004 I interviewed Mr. Nassiri in my office for approximately one hour and 50 minutes. Prior to the interview, I gave Mr. Nassiri the Lamb warning which he understood. During the interview Mr. Nassiri, who is 41 years old (DOB: 11/4/62) described his marriage on December 25, 1993 to Maria Jose Arancibia, who is now 31 years old (DOB: 7/25/72), the birth of his daughter Yasameen on April 24, 1994 and their subsequent separation in January, 1996 and divorce in April, 1997.

5. Mr. Nassiri told me that he met Ms. Arancibia in May, 1993 when, as he described, Ms. Arancibia had "run away' from her family in Argentina. After their marriage and the birth of their daughter, Mr. Nassiri and Ms. Arancibia relocated to Argentina in June, 1994. Mr. Nassiri described the family situation in Argentina as rife with tension, among Ms. Arancibia her mother and her brothers Maxie and Juan.

6. During this time, Mr. Nassiri consulted a psychologist because of his desire to return to the United States, where he had "dropped everything" to move to Argentina. According to Mr. Nassiri, Ms. Aranciba had a "panic attack" and threatened

2

suicide one night and was taken, by ambulance, to a hospital. She was prescribed medicine and began to see a psychologist for therapy

7. Subsequently the family returned to the United States in May, 1995 and attempted to establish themselves in the Boston area, once again. During this time, Mr. Nassiri reports that Ms. Arancibia became depressed and began to see a doctor at the Harvard Community Health Center in Copley Square; he reports that this treatment continued for approximately "2 to 3 months."

8. Ms. Arancibia returned to Argentina with Yasameen in January, 1996 and has resided there since that time. Mr. Nassiri told me that, since that time, he has visited regularly, "three, four five times a year." He also told me that Ms. Arancibia informed him that she was diagnosed with Depression and then he said " three or four years ago, she said that she has Bi-Polar Illness and was told to take medication; she also told me this about six to seven months ago". And he continued, "There was a time that I was there, two to three years ago, that she showed me a bottle and said, 'these are my medications'."

9. Mr. Nassiri explained that he "was always worried for Yasameen," but that recent events have significantly elevated his concerns. He also said that Ms. Arancibia had another child, a son, approximately four years ago. He also told me that Ms. Aranciba was living with a drug dealer (not the father of her son) from approximately December, 2003 until recently; he said that Maria told him that this man was abusive, that "he threatened my (Maria's) life and Yossi's life".

10. Mr. Nassiri told me that his daughter missed "22%" of school last year. He also told me that his daughter recently told him that "every time I cried they (mother and

3

live-in boyfriend) put me in a room and closed the door" Additionally, Mr. Nassiri said that he "noticed that Maria started hitting Yossi when she was four years old," and that in his most recent visit to Argentina, Maria's mood swings appeared far more drastic. Mr. Nassiri believes that his Iranian heritage would subject him to prejudice in an already flawed court system in Argentina, which would apparently not impose adequate measures to protect Yasameen, particularly in the short term.

11. Mr. Nassiri has placed Yasameen in St. Mary's Catholic School in Brookline, where she is doing well, and has placed her in psychotherapy with Dr. Kyra Liberman, while enrolling her in various recreational activities.

12. It is my clinical opinion that Mr. Nassiri is genuinely concerned for the welfare of his child, and that, moreover, his narrative is an accurate portrayal of his observations of Ms. Aranciba and her family. There appears no evidence that Mr. Nassiri is in any way an angry or vengeful ex-husband. On the contrary, his narrative is replete with concern for both Ms. Aranciba and his daughter. Mr. Nassiri's description of his life as a member of this family are, in the opinion of this clinician, filled with examples of his attempts to mollify a difficult situation while focused on the safety of his daughter. For example, at a time after the birth of Maria's second child, when the whereabouts of the father were unknown, Mr. Nassiri gave that child his surname.

13. It is my opinion, that Mr. Nassiri's description of the psychologically unstable behavior of Ms. Aranciba remains consistent and credible. He was not, in my opinion, engaging in gratuitous slander of Ms. Aranciba or even in self-serving behavior.

14. Parents who suffer from bi-polar disorder and who do not follow a proper regimen of treatment and medication can predictably pose a grave risk of psychological

4

or physical harm to their children. Without a psychological or psychiatric evaluation of Maria, a final conclusion cannot be reached as to whether Yasameen could be safely returned to Argentina, or as to what conditions would be necessary to ensure a safe environment there for Yasameen.

I declare that the foregoing is true and accurate to the best of my knowledge, subject to the pains and penalties of perjury.

_____
Carol G. Feldman, Ph.D., J.D.

3/21/04